**Ross v. Nationwide Mutual Ins. Co.**
*[Cite as 7 AOA 442]*

*Case No. 90AP165*
*Franklin County, (10th)*
*Decided September 27, 1991*

*Douglas S. Roberts, Clark, Perdue & Roberts Co., L.P.A., for appellants.*

*Andrew W. Cecil and William H. Jones, Crabbe, Brown, Jones, Potts & Schmidt, for appellee.*
STRAUSBAUGH, J.

This is an appeal by plaintiffs from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant. Summary judgment was granted in favor of defendant on the basis that the subject insurance policy did not provide to plaintiffs any underinsured motorist coverage arising out of the death of the decedent.

The following facts present this court with a unique question of underinsured motorist coverage. On July 29, 1988, decedent, Kenneth M. Bohon, was struck and killed by an underinsured motorist in Parsons, West Virginia. Plaintiff, Debra Ross, is decedent's sister, and plaintiff, Samantha Ross, is her daughter. On April 3, 1989, plaintiffs filed uninsured/underinsured claims against defendant, Nationwide Mutual Insurance Company, under their policy, and defendant denied coverage on April 19, 1989. On May 9, 1989, plaintiffs commenced the present action by filing a complaint for declaratory judgment in the trial court against defendant. In their complaint, plaintiffs sought a declaration by the trial court that, on the basis of decedent's death, they were entitled to proceeds arising out of the underinsured motorist coverage issued by defendant to plaintiffs. At the time of the decedent's accident, defendant insured plaintiffs in the amount of $100,000 per person/$300,000 per occurrence pursuant to an automobile liability policy.

Plaintiffs have set forth several facts indicating that they had a close relationship with decedent. At the time of his death, decedent was an emancipated adult of twenty-nine years. Defendant has also set forth facts demonstrating that the last residence which decedent shared with plaintiffs ended in December 1984. At the time of decedent's death, decedent was a resident of West Virginia, while plaintiffs were Ohio residents. The tortfeasor in the present case was covered by a bond and/or insurance policy in the amount of $12,500 per person/$25,000 per occurrence.

Decedent, who was insured separately, held two policies of insurance with State Farm Mutual Automobile Insurance Company with the maximum of underinsured/uninsured motor vehicle coverage available being $40,000, which

has been paid to the administratrix of decedent's estate.

On November 22, 1989, plaintiffs filed their motion for summary judgment. On December 8, 1989, defendant filed its memorandum contra to plaintiffs' motion and also filed its own motion for summary judgment. On February 2, 1990, the trial court granted defendant's motion for summary judgment.

On appeal, plaintiffs set forth one assignment of error for this court's review:

"The trial court, in overruling Plaintiff-Appellant's Motion for Summary Judgment and in sustaining Defendant-Appellee's Motion for Summary Judgment, erred in deciding that the Nationwide automobile insurance policy at issue does not make available to Plaintiffs underinsured motorist coverage arising out of the death of Kenneth Michael Bohon."

As plaintiffs' complaint was dismissed pursuant to the trial court's granting of defendant's motion for summary judgment, we note at the outset, that summary judgment is designed to eliminate the time and expense consumed by trial where there exists no genuine issue of material fact and, as a matter of law, the moving party is entitled to judgment. Civ.R. 56(C). In *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, the Supreme Court of Ohio set forth the necessary elements for the granting of summary judgment:

"Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Id.* at 327.

The moving party has the burden of demonstrating that there exists no genuine issue as to any material facts with regard to the critical issues presented. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64. Thus the moving party must present evidence on all the material determinative issues presented in an action in order for summary judgment to be properly granted in his favor. *Rayburn v. J.C. Penney Outlet Store* (1982), 3 Ohio App.3d 463.

At issue in the present case is the appropriate construction of R.C. 3937.18, which requires insurers to offer uninsured and underinsured motorist coverage to their insureds. As this case involves injuries arising out of an accident with an underinsured motorist, we note the language of R.C. 3937.18, effective January 5, 1988, which provides in pertinent part:

"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following are provided:

" ***

"(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."

We note that the statute does not indicate who must have sustained the bodily injury.

In the present case, Ohio's wrongful death statutes are necessarily implicated. R.C. 2125.01 provides in pertinent part:

"When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued *** shall be liable to an action for damages, not withstanding the death of the person injured *** ."

R.C. 2125.02 also provides in pertinent part:

"(A)(1) An action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom

are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent."

We begin our review of plaintiffs' assignment of error by recognizing several general principles of insurance which are involved in this case. As was stated by the court in *James v. Michigan Mut. Ins. Co.* (1985), 18 Ohio St.3d 386:

" *** Underinsured motorist coverage was first required by statute after the legislature discovered the 'underinsurance loophole' in *uninsured* motorist coverage--*i.e.*, persons injured by tortfeasors having extremely low liability coverage were being denied the same coverage that was being afforded to persons who were injured by tortfeasors having *no* liability coverage. Thus, the original motivation behind the enactment of R.C. 3937.181(C) was to assure that persons injured by an underinsured motorist would receive at least the same amount of total compensation that they would have received if they had been injured by an uninsured motorist." *Id.* at 389.

In *Abate v. Pioneer Mutual Cas. Co.* (1970), 22 Ohio St.2d 161, 165, the Supreme Court stated that uninsured motorist coverage " *** is designed to protect persons injured in automobile accidents from losses which, because of the tort-feasor's lack of liability coverage, would otherwise go uncompensated. *** " Subsequently, in *Bartlett v. Nationwide Mutl. Ins. Co.* (1973), 33 Ohio St.2d 50, 52, the court concluded that " *** the legislative purpose in creating compulsory uninsured motorist coverage was to place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance."

However, the Supreme Court has recognized that there may exist a valid restriction upon uninsured motorist coverage. In the syllabus in *Ady v. West American Ins. Co.* (1982), 69 Ohio St.2d 593, the court held:

"Any contractual restriction on the coverage mandated by R.C. 3937.18 must comply with the purpose of this statute. *** "

Subsequently, in *Hedrick v. Motorists Mut. Ins. Co.* (1986), 22 Ohio St.3d 42, the court stated that the only law emanating from *Ady, supra,* was that set forth in the syllabus. While not implicated in the present case, the Supreme Court in *Hedrick, supra,* held in the syllabus:

"An insurance policy provision which denies uninsured motorist coverage, when bodily injury is sustained by any person while *occupying a motor vehicle owned by an insured* but which vehicle is not specifically insured under the policy, is a valid exclusion."

In reaching this conclusion, the Supreme Court noted Justice Holmes' dissent in *Ady, supra,* at 604:

"In construing the mandates of the General Assembly insofar as the offering of uninsured motorist coverage in Ohio is concerned, we must not unduly restrict the free right of contract, and must allow for a certain amount of latitude for the exercise of discretion on the part of the policyholder as to the desirable extent or breadth of coverage for which he is willing, or able, to pay the premiums."

On November 16, 1989, the parties stipulated to several facts and attached the original automobile insurance policy at issue, as well as several subsequent endorsements. In November 1988, by endorsement 2012, defendant amended the subject insurance policy so as to reflect the amendment of R.C. 3937.18(A)(2).

Endorsement 2012 provides in pertinent part:

"This endorsement amends your policy's Uninsured Motorists coverage.

"1. The bodily injury damages payable under this coverage are compensatory damages; they do not include punitive or exemplary damages.

"2. An uninsured motor vehicle includes an underinsured motor vehicle. This is one for which there are bodily injury liability coverage or bonds in effect. Their total amount, however, is less than the limits of this coverage. These limits are shown in your policy's Declarations."

Accordingly, to review plaintiffs' coverage in the present case, we must refer to those portions of the policy which provide uninsured motorist coverage. Endorsement 1879A, effective March 1988, amended the original policy so as to provide in pertinent part:

"UNINSURED MOTORISTS.

"The Coverage section is replaced to read:

"COVERAGE

"We will pay bodily injury (meaning bodily injury, sickness, disease, or death) damages that are due you by law from the owner or driver of an uninsured motor vehicle. Damages must result from an accident arising out of the:

"1. ownership;

"2. maintenance; or

"3. use;

"of the uninsured motor vehicle. We will also pay these damages to relatives."

Endorsement 1879A also added the following to the definition provision of the original policy:

"9. 'RELATIVE' means one who regularly lives in your household, related to you by blood, marriage or adoption (including a ward or foster child). A relative may live temporarily outside your household."

Plaintiffs claim that the language of the subject policy, as well as R.C. 3937.18, entitled both plaintiffs to present an underinsured motorist claim to defendant. Plaintiffs insist that they are entitled to the proceeds from the insurance policy issued by defendant as they have met the necessary requirements for receipt of the insurance proceeds since it is not necessary that the decedent be the insured or the resident relative in order for plaintiffs to make this claim.

Plaintiffs direct this court's attention to the Supreme Court's decision in *Sexton v. State Farm Mutl. Automobile Ins. Co.* (1982), 69 Ohio St.2d 431.

While *Sexton* involved the construction of the uninsured motorist statute contained in R.C. 3937.18(A), a predecessor to R.C. 3937.18(A)(1), we find no significant distinction, given the facts in the present case, in that we are now required to construe the underinsured motorist provision set forth in R.C.3937.18(A)(2). In *Sexton, supra*, plaintiff sought recovery pursuant to his automobile liability insurance policy with State Farm arising out of the death of his seventeen year old daughter, who died as a result of an automobile accident with an uninsured driver. While the decedent did not reside with plaintiff at the time of the accident, due to a custody award to decedent's mother, plaintiff was obligated to pay for the decedent's financial support. Pursuant to this duty, plaintiff had paid approximately $2,300 in medical and funeral expenses resulting from the decedent's injuries and death. State Farm was obligated " '[t]o pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such unin-sured motor vehicle *** .' " *Id.* at 432. While not set forth in R.C. 3937.18(A), but required by the policy issued by State Farm, was that the bodily injury be sustained by the insured.

In a four-to-three majority, the Supreme Court held that the policy restriction requiring that the bodily injury be sustained by the insured was void as an attempt to limit recovery contrary to the purposes of R.C. 3937.18. *Id.* at 437. The Supreme Court held in paragraphs one and two of the syllabus:

"1. R.C. 3937.18 provides protection for insured persons for damages for bodily injury and death, *inter alia*, which they are legally entitled to recover from owners or operators of uninsured motor vehicles.

"2. An insured father is entitled to recover those damages, which he was legally obligated to pay, under his uninsured motorist coverage for the wrongful death of a minor child, even if the child was not an insured according to the terms of the policy."[1]

In *Sexton, supra*, the court set forth a four-part test to be applied in determining whether a claimant was entitled to uninsured motorist coverage.

First, the claimant must be an insured under the policy from which she seeks recovery. Second, the insured must be entitled to recover damages sustained arising out of injury or death caused by an uninsured motorist. Third, the damages sustained must result from injury, sickness, disease, or death. Finally, the tortfeasor must be the owner or operator of an uninsured motor vehicle. *Id.* at 434-435.

In applying the four-part test as set forth in *Sexton, supra*, in the present case, we must conclude that the trial court erred in granting summary judgment in favor of defendant. Clearly, plaintiffs satisfy the first requirement since they are insured under the policy from which they seek to recover. While plaintiffs are not rebuttably presumed to have suffered damages, R.C. Chapter 2125 does indeed provide plaintiffs with a cause of action for recovery of losses sustained as a result of decedent's death. Plaintiffs' damages are the result of injury and death. Finally, plaintiffs satisfy the fourth requirement of *Sexton, supra*, since the tortfeasor was the owner or operator of an underinsured motor vehicle.

Plaintiffs also cite *Wood v. Shepherd* (1988), 38 Ohio St.3d 86, to support their claim against defendant. In *Wood, supra*, plaintiff, his wife, and their two minor children, were involved in

a traffic accident. Plaintiff's wife was thrown from their car and received injuries which ultimately resulted in her death. Plaintiff, individually and in his capacity as administrator of his wife's estate and guardian of their two minor children, brought an action against the tortfeasor and plaintiff's insurance company, The Professionals Insurance Company ("Professionals"), pursuant to the underinsured motorist provisions set forth in the policy. Plaintiff reached a settlement with the tortfeasor's insurance company for the policy limits of $100,000. The Supreme Court held that the Professionals' policy entitled it to set off payments received by plaintiff from the tortfeasor or his insurance carrier.

The court held, in paragraph one of the syllabus:

"Each person entitled to recover damages pursuant to R.C. 2125.02 for wrongful death, and who is an insured under an underinsured motorist provision in an insurance policy, has a separate claim and such separate claims may not be made subject to the single person limit of liability in the underinsured motorist provision. (R.C. 2125.02 and 3937.18[A][2], construed and applied.)"

The Supreme Court further stated, in *Wood, supra*:

"It is clear from the provisions of R.C. 2125.02, quoted *supra*, that in a wrongful death action, the surviving spouse and the children of the decedent have the right to recover damages suffered by reason of the wrongful death, even though the action must be brought in the name of the personal representative of the decedent. This court, through Justice Wright writing for the majority, has held that '[a]ccording to the language of the uninsured motorist statute, this mandated coverage is " *** for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, *including death*, resulting therefrom." R.C. 3937.18(A)(1). (Emphasis added.) Therefore, it is clear that it was the intention of the General Assembly in requiring insurance companies to provide uninsured coverage that recovery be had for wrongful death.' *In re Estate of Reech* (1986), 21 Ohio St.3d 126, 128, 21 OBR 429, 431, 488 N.E.2d 195, 197. Of course, this same reasoning also applies to underinsured motorist coverage." *Id.* at 89-90.

We believe that the Supreme Court's decision in *Wood, supra*, represents the continued validity of its prior decision in *Sexton, supra*.

We are aware that there exist cases in Ohio which reach a result contrary to our decision in the present case. In *Tavzel v. Aetna Life & Cas. Co.* (June 16, 1988), Cuyahoga App. No. 53931, unreported, the court applied *Hedrick, supra*, and concluded " *** Aetna clearly and unambiguously exercised its right to limit its protection to bodily injury suffered by a covered person. ***" *Id.* at 6. In reaching this conclusion, the court noted that since the court's decision in *Sexton, supra*, there had been an election which resulted in the replacement of two members of the majority opinion in *Sexton, supra*. A similar result was reached by the Fifth District Court of Appeals in *Monndt v. Motorist Mut. Ins. Co.* (Mar. 27, 1989), Stark App. No. 7632, unreported, in which the court relied upon the majority's opinion in *Tavzel, supra*. See, also, *Smith v. Erie Ins. Group* (Apr. 16, 1990), Stark App. Nos. CA-7902 and CA-7903, unreported. But, see, *Devericks v. Royal Ins. Co.* (Jan. 29, 1990), Stark App. No. CA-7800, unreported. *Cf. Barrish v. Cincinnati Ins. Co.* (Oct. 12, 1989), Franklin App. No. 89AP-440, unreported (1989 Opinions 3930).

We are inclined to agree with the dissent in *Tavzel, supra*, which recognized that part of the court's decision in *Hedrick, supra*, to validate the restriction at issue, was to effectuate the purposes of the antistacking amendment set forth in R.C. 3937.18(G). *Hedrick, supra*, merely upheld a policy provision excluding coverage for bodily injury sustained by any person while occupying a motor vehicle owned by the insured or any family member but who is not specifically insured under the policy. The dissent in *Tavzel, supra*, also noted that " *** [s]imply because *Hedrick* upheld an exclusion in those circumstances does not mean the case signals this court to adopt a more tolerant approach towards exclusions in general. *** " *Id.* at 9. Moreover, the Supreme Court in its decision in *Sexton, supra*, specifically held that a policy provision which required that the bodily injury be sustained by the insured was contrary to R.C. 3837.18 and was therefore void. Defendant cites *Hill v. State Farm Mut. Auto. Ins. Co.* (Nov. 10, 1988), as amended (Nov. 22, 1988), Lucas App. No. L-87-382, unreported, in which the plaintiff sought to recover under her automobile insurance policy issued by State Farm. Plaintiff's father was struck and killed by an

uninsured motorist while he attempted to "jump start" his vehicle. The accident occurred in Las Vegas, Nevada. Plaintiff's father's automobile was insured under his own policy and neither plaintiff nor her vehicle were present at the accident. Plaintiff argued that her father's death constituted a loss for which she was entitled to coverage under the uninsured motorist provision of her policy.

The Sixth District Court of Appeals applied the four-part test as set forth in *Sexton, supra,* and concluded that plaintiff failed to meet the second prong of the *Sexton* test. The court reasoned that, while plaintiff would be entitled to recover under the state's wrongful death statute, it relied upon *In re Estate of Reeck* (1986), 21 Ohio St.3d 126, so as to conclude that she had already received her share of damages as part of the distribution of settlement proceeds. The court concluded that the facts presented in *Hill, supra,* were distinguishable from those present in *Sexton, supra,* relying heavily upon the fact that plaintiff was not financially responsible for the decedent and did not incur any expenses which resulted from her father's death.

We are unable to agree with the court's reasoning in *Hill, supra,* that the Supreme Court's decision in *Sexton, supra,* is distinguishable and that therefore plaintiffs in the present case are barred from seeking recovery under the subject policy. The court in *Hill, supra,* concluded that since plaintiff was not financially responsible for the decedent, she was not entitled to seek recovery from her insurance carrier. However, as we have pointed out, the limitation set forth in the syllabus in *Sexton, supra,* appears to be limited to the wrongful death statutes as they were enacted in 1969. As these statutes have since been amended to allow recovery for nonpecuniary loss, we find the *Hill* court's reliance on the second paragraph of the syllabus in *Sexton, supra,* to be misplaced. Since plaintiffs in the present case have satisfied each of the four elements as set forth in *Sexton, supra,* we are bound to sustain their assignment of error.

Accordingly, this court must apply the Supreme Court's decision in *Sexton, supra,* and reverse the decision of the trial court granting summary judgment in favor of defendant. The judgment of the trial court is hereby reversed, and this cause is remanded for further proceedings consistent with the law and this opinion.

*Judgment reversed and cause remanded.*

BRYANT and CACIOPPO, J.J., concur.
CACIOPPO, J., of the Ninth Appellate District, sitting by assignment in the Tenth Appellate District.

---

[1] We note that the Supreme Court's decision in *Sexton v. State Farm Mutl. Automobile Ins. Co.* (1982), 69 Ohio St.2d 431, applied R.C. 2125.02 as it was in effect on November 21, 1969. *Id.* at 435, fn. 5. The statute then in effect limited recovery to pecuniary losses only. However, the amended version of R.C. 2125.02, effective January 5, 1988, contains no such limitation. Therefore, it would appear that paragraph two of the syllabus in *Sexton, supra,* would be limited to those cases applying the 1969 version of R.C. 2125.02.